1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,                    CASE NO. CV F 07-0491 LJO GSA

12                         Plaintiff,       _____**ORDER ON THIRD-PARTY DEFENDANT'S**
                                            **MOTION TO DISMISS**
13            vs.                            (Doc. 82.)

14   STEPHEN C. LYON, et al.,

15                         Defendants.
     _____/
16
     AND RELATED CROSS-ACTIONS AND
17   THIRD-PARTY ACTIONS.

18   _____/

19                              **INTRODUCTION**

20          Third-party defendant Vulcan Materials Company ("Vulcan") seeks to dismiss claims for

21   hazardous substances clean up contribution[1] on grounds that Vulcan is not a responsible party subject

22   to liability under the Comprehensive Environmental Response Compensation and Liability Act

23   ("CERCLA"), 42 U.S.C. §§ 9601, et seq.  The Lyon/Tondas respond that under recent Ninth Circuit

24   Court of Appeals cases, Vulcan, as a chemical manufacturer, is an "arranger" subject to CERCLA

25   liability. This Court considered Vulcan's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and

26   VACATES the December 20, 2007 hearing.  For the reasons discussed below, this Court DENIES

27   _____

28          [1]     Defendants and third-party plaintiffs Stephen C. Lyon, Suzanne S. Lyon, Russell R. Tonda and Diane M.
     Tonda (collectively the "Lyon/Tondas")seek to impose CERLCA contribution costs on Vulcan.

                                              1

1   dismissal of the Lyon/Tondas' "arranger" claims and derivative contribution, indemnity and declaratory

2   relief claims.

3   **BACKGROUND**

4   **Environmental Contamination Claims**

5   Vulcan is a former bulk chemical manufacturer and is headquartered in Alabama.   Vulcan

6   manufactured perchloroethylene ("PCE"), a chlorinated solvent which is commonly used in dry cleaning.

7   Since 1974, the Lyon/Tondas have owned Modesto property where a dry cleaner known as Halford's

8   ("Halford's") is located.

9   The United States of America ("Government"), for the Environmental Protection Agency,

10  initiated this action in March 2007 to pursue CERCLA claims against the Lyon/Tondas and the personal

11  representative of an estate of a deceased who operated Halford's during 1977-2002.  The Government

12  seeks past and future costs to investigate and remediate PCE contamination from Halford's facility,

13  including groundwater contamination.   The Government further seeks civil penalties against the

14  Lyon/Tondas for failure to adequately respond to a CERCLA information requests.

15  On September 10, 2007, each of the Lyon/Tondas filed identical in form third-party complaints

16  to pursue causes of action for CERCLA and state law contribution, equitable indemnity and declaratory

17  relief.  Vulcan characterizes the relief sought by the Lyon/Tondas as contribution toward relief sought

18  by the Government in that the Lyon/Tondas do not seek independent damages or response costs other

19  than those sought by the Government.   The Lyon/Tondas name 22 third-party defendants of which 20

20  are classified as follows:

21      1.      Five "Chlorinated Solvent Manufacturers," including Vulcan and other chemical

22              manufacturers;

23      2.      Four "Solvent and Equipment Distributors";

24      3.      Two "Chlorinated Solvent Equipment Manufacturers";

25      4.      Three "Owners or Operators of Halford's"; and

26      5.      Six "Owners or Operators of Sites Adjacent or Near to Halford's".

27  The Lyon/Tondas allege that Vulcan and the other solvent manufacturer third-party defendants:

28  (1) "manufacturered, distributed, transported, packaged, sold and/or disposed of a toxic chlorinated

2

1  solvent," PCE; and (2) "were legally responsible for and committed each of the tortious and wrongful

2  acts alleged in the Third-Party Claims."  The Lyon/Tondas further allege that if they are liable under the

3  Government's CERCLA claims, the 22 third-party defendants, including Vulcan: (1) are liable "for their

4  acts or omissions"; and (2) were owners, operators, generators or transporters, as defined by CERCLA,

5  at the time hazardous substances were disposed of on the Halford's site and/or arranged for disposal of

6  hazardous substances, accepted hazardous substances for transport and disposal, or transported

7  hazardous substances at the facility.  The Lyon/Tondas conclude that they are entitled to contribution

8  from the third-party defendants.

9      The Lyon/Tondas do not allege that Vulcan sold PCE directly to Halford's but rather that the

10  solvent distributors purchased and resold chlorinated solvents to Halford's.  There are no allegations that

11  Vulcan: (1) had contact with Holford's; (2) was aware of which dry cleaners purchased PCE from a

12  solvent distributor; or (3) possessed authority or control over subsequent disposal by Halford's of PCE

13  in waste form.

14                                    **DISCUSSION**

15  _____ **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards** _____

16      Vulcan seeks to dismiss the Lyon/Tondas' CERCLA contribution cause of action in that the

17  Lyon/Tondas fail, and are unable, to allege that Vulcan is a responsible party subject to CERCLA

18  liability.  Vulcan seeks to dismiss the Lyon/Tondas' state law contribution, equitable indemnity and

19  declaratory relief causes of action in the absence of derivative CERCLA liability.

20      A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

21  forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

22  of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

23  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

24  support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

25  *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

26  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

27  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

28  *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  F.R.Civ.P. 12(b)(6) dismissal is proper

1   when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

2   *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

3       In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most

4   favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

5   whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty*

6   *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). "However, conclusory allegations of law and

7   unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d

8   696, 699 (9th Cir. 1998). A court need not permit an attempt to amend a complaint if "it determines that

9   the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v.*

10  *N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

11      With these standards in mind, this Court turns to the merits of Vulcan's F.R.Civ.P. 12(b)(6)

12  motion.

13                              **Responsible CERCLA Parties**

14      CERCLA was enacted in 1980 to provide effective responses to health and environmental threats

15  posed by hazardous waste sites. *United States v. Burlington Northern & Santa Fe Ry. Co.*, 502 F.3d 781,

16  792 (9th Cir. 2007). Under CERCLA, federal and state governments may initiate cleanup of toxic areas

17  and sue potentially responsible parties for reimbursement. *Burlington Northern*, 502 F.3d at 792. A key

18  CERCLA purpose is to shift "the cost of cleaning up environmental harm from the taxpayers to the

19  parties who benefitted from the disposal of the wastes that caused the harm." *EPA v. Sequa Corp. (In*

20  *the Matter of Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 897 (5th Cir. 1993). CERCLA is a "super-strict"

21  liability statute. *Burlington Northern*, 502 F.3d at 792. "[L]iability is joint and several when the harm

22  is indivisible." *Burlington Northern*, 502 F.3d at 793.

23      42 U.S.C. § 9607(a)[2] identifies the following as "covered persons" subject to CERCLA

24  contribution claims:

25              (1) the **owner and operator** of . . . a facility,

26              (2) any person who at the time of disposal of any hazardous substance **owned or**
                **operated any facility** at which such hazardous substances were disposed of,

27

28      [2]      Unless otherwise noted, all further statutory references will be to CERCLA, United State Code, Title 42.

                                          4

(3) any person who by contract, agreement, or otherwise **arranged for disposal or treatment**, or **arranged** with a transporter **for transport for disposal or treatment**, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances ["arrangers"], and

(4) any person who **accepts or accepted** any hazardous substances **for transport** to disposal or treatment facilities . . . or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ["transporters"] . . . (Bold added.)

Section 9613(f)(1) authorizes contribution claims:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

To establish a prima facie contribution case against Vulcan, the Lyon/Tondas must allege and prove that Vulcan "is within one of four classes of persons subject to CERCLA's liability provisions." *California Dept. of Toxic Substances Control v. Payless Cleaners*, 368 F.Supp.2d 1069, 1076 (E.D. Cal. 2005). Although section 9607 creates the right of contribution, the "machinery" of section 9613 "governs and regulates such actions, providing the details and explicit recognition that were missing" from section 9607. *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1302 (9th Cir. 1997). As such, Vulcan argues that if an entity is not a covered person under section 9607, that entity is not subject to section 9613 contribution liability because 9607 creates the section 9613 right of contribution.

## CERCLA Arranger Liability

### *"Direct" And "Broader" Arrangers*

Vulcan points out that section 9607(a)(3)'s "arranger" category is the closest to "apply to a bulk chemical manufacturer like Vulcan." The Ninth Circuit has "avoided giving the term 'arranger' too narrow an interpretation to avoid frustrating CERCLA's goal of requiring that companies responsible for the introduction of hazardous waste into the environment pay for remediation." *Burlington Northern*, 502 F.3d at 807. The Ninth Circuit recognizes "direct" arranger liability, which "involves transactions in which the central purpose . . . is disposing of hazardous wastes." *Burlington Northern*, 502 F.3d at

5

1    807.  The Ninth Circuit also recognizes a "broader" category of arranger liability "in which disposal of

2    hazardous wastes is a foreseeable byproduct of, but not the purpose of, the transaction giving rise to PRP

3    [potential responsible party] status." *Burlington Northern*, 502 F.3d at 807.  Broader arranger liability

4    "involves transactions that contemplate disposal as a *part* of, but not the focus of, the transaction; the

5    'arranger' is either the source of the pollution or manages its disposal." *Burlington Northern*, 502 F.3d

6    at 807 (italics in original). "These broader arranger cases can involve situations . . . in which the alleged

7    arrangers did not contract directly for the disposal of hazardous substances but did contract for the sale

8    or transfer of hazardous substances, which were then disposed of." *Burlington Northern*, 502 F.3d at

9    807. "Thus, an entity can be an arranger even if it did not intend to dispose of the product.  Arranging

10   for a transaction in which there necessarily would be leakage or some other form of disposal of

11   hazardous substances is sufficient." *Burlington Northern*, 502 F.3d at 808.

***Useful Product Defense***

13        Relying on the Ninth Circuit's "broader" arranger interpretation, the Lyon/Tondas argue that a

14   manufacturer may incur CERCLA arranger liability "where it arranged for the sale and transfer of

15   chemicals under circumstances in which a known or inherent part of the transfer was leakage into the

16   environment." Vulcan seeks to invoke the "useful product" defense and argues that as a manufacturer

17   of a "useful product," it has a "complete defense to CERCLA liability" in that it "did not arrange to

18   dispose of the hazardous substances, did not possess any authority or control over its disposal, and did

19   not 'own or possess' the hazardous substances at the time of disposal."

20        Acknowledging its "expansive view of arranger liability," the Ninth Circuit has "refused to hold

21   manufacturers liable as arrangers for selling a useful product containing or generating hazardous

22   substances that *later* were disposed of." *Burlington Northern*, 502 F.3d at 808.  "Useful product" cases

23   recognize that "liability cannot extend so far as to include *all* manufacturers of hazardous substances,

24   on the theory that there will have to be disposal of the substance some time down the line, *after* it is used

25   as intended." *Burlington Northern*, 502 F.3d at 808 (italics in original).  Vulcan notes that the useful

26   / / /

27   / / /

28   / / /

6

1    product defense arises out of CERCLA's definition of "disposal" (Section 9601(29))[3] in that merely

2    identifying a "hazardous substance" is insufficient to establish that its placement in a facility constitutes

3    "disposal of any hazardous substance" under CERCLA.  *See 3550 Stevens Creek Assocs. v. Barclays*

4    *Bank of Calif.*, 915 F.2d 1335, 1360-1361 (9th Cir. 1990).   For CERCLA purposes, "disposal" is

5    construed "as referring only to an affirmative act of discarding a substance as waste, and not to the

6    productive use of the substance."  *3550 Stevens Creek*, 915 F.2d at 1362.  In the CERCLA context,

7    "hazardous substances are generally dealt with at the point when they are about to, or have become,

8    wastes." *3550 Stevens Creek*, 915 F.2d at 1362.  "Congress did not intend CERCLA to target legitimate

9    manufacturers or sellers of useful products but rather desired "to hold liable those who would attempt

10   to dispose of hazardous wastes or substances under various deceptive guises in order to escape liability

11   for their disposal." *Dayton Independent School Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1065-

12   1066 (5th Cir. 1990).  As such, Vulcan contends that PCE, a chemical solvent, is a new, useful product,

13   not waste, and that "productive use of a substance is not a disposal, and therefore does not generate

14   CERCLA liability."

15        In response, the Lyon/Tondas point to *Burlington Northern*, 502 F.3d at 808:

16            The useful product cases have no applicability where, as here, the sale of a useful
             product necessarily and immediately results in the leakage of hazardous substances.  In
17           that circumstance, the leaked portions of the hazardous substances are *never* used for
             their intended purpose.  (Italics in original.)
18

19   The Lyon/Tondas argue that the useful product doctrine does not apply when chemical leakage is

20   inherent and contemporaneous with the manufacturer's transfer process and the manufacturer has

21   sufficient control over and knowledge of the transfer process to be considered a CERCLA arranger.  The

22   Lyon/Tondas further contend that factual questions whether Vulcan's PCE sales were arrangements for

23   disposal preclude F.R.Civ.P. 12(b)(6) dismissal.

24        The Lyon/Tondas' pinpoint allegation is that Vulcan and other solvent manufacturers

25

26        [3]     CERLCA borrows the Solid Waste Disposal Act's definition of "disposal" which "means the discharge,
     deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water
27   so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air
     or discharged into any waters, including ground waters."  42 U.S.C. § 6903(3).
28

1    "manufactured, distributed, transported, packaged, sold and/or disposed of" PCE.  The Lyon/Tondas

2    lump Vulcan in with the other third-party defendants who all "arranged for disposal of hazardous

3    substances, accepted hazardous substances for transport and disposal or transported hazardous

4    substances" at Halford's.  The problem for Vulcan is that construing the Lyon/Tondas' third-party

5    complaints most favorably to them, *Burlington Northern* provides support to impose arranger liability

6    to a source who contracts to sell hazardous substances which are disposed of.  Although under the useful

7    product defense, manufacture, distribution and sale of PCE alone may not invoke CERCLA liability,

8    Vulcan's alleged disposal or leakage of hazardous materials are factual questions not subject to

9    F.R.Civ.P. 12(b)(6) resolution.  At this point, this Court is not in a position to determine whether Vulcan,

10   as a PCE manufacturer and seller, is a disposer or discharger of PCE waste.   Although they do not

11   provide a model pleading, the Lyon/Tondas allege enough for arranger liability and to avoid the useful

12   product defense.[4]

13                     ***Ownership Or Possession Of Hazardous Substances***

14            Vulcan argues that it is not subject to CERCLA "arranger" liability in the absence of allegations

15   that it owned or possessed hazardous substances or had authority or duty to dispose of hazardous

16   substances.  Vulcan notes the absence of facts for the Lyon/Tondas to allege that "Vulcan owned or

17   possessed PCE waste or that it had a duty or authority to dispose of PCE waste."  The Lyon/Tondas

18   respond that the issue of Vulcan's ownership of hazardous waste arises from its PCE sales and in turn

19   PCE disposal raises factual issues.

20            "No court has imposed arranger liability on a party who never owned or possessed, and never

21   had any authority to control or duty to dispose of, the hazardous materials at issue."  *United States v.*

22   *Iron Mountain Mines, Inc.*, 881 F.Supp. 1432, 1451 (E.D. Cal. 1995); *see United States v. Shell Oil Co.*,

23   294 F.3d 1045, 1058 (9th Cir. 2002) ("we can do no better than quote from Judge Levi's careful opinion

24   in *United States v. Iron Mountain Mines, Inc.*"); *General Elec. Co. v. AAMCO Transmissions, Inc.*, 962

25   F.2d 281, 286 (2nd Cir. 1992) ("it is the *obligation* to exercise control over hazardous waste disposal, and

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
          [4]        Vulcan belabors the point that other trial courts have ruled in its favor on the useful product defense and
28   arranger liability.  However, those trial court decisions preceded *Burlington Northern*.  Moreover, despite Vulcan's claim,
     the other trial court's decisions lack precedential effect on this Court.

8

not the mere ability or opportunity to control the disposal of hazardous substances that makes an entity

an arranger under CERCLA's liability provision") (emphasis in original)).  In *General Elec. Co. v.*

*AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2nd Cir. 1992), the Second Circuit Court of Appeals

explained:

> . . . there must be some nexus between the potentially responsible party and the disposal of the hazardous substance. . . . This nexus is premised upon the potentially liable party's conduct with respect to the disposal or transport of hazardous wastes. 42 U.S.C. § 9607(a). In other words, Congress employed traditional notions of duty and obligation in deciding which entities would be liable under CERCLA as arrangers for the disposal of hazardous substances. Accordingly, this court concludes that it is **the obligation to exercise control over hazardous waste disposal,** and not the mere ability or opportunity to control the disposal of hazardous substances that makes an entity an arranger under CERCLA's liability.  (Bold added.)

However, the Ninth Circuit takes the following view:

> The text of the statute does not require that the arranger own the hazardous wastes, either at the time the "arranger" arranged for the transaction or at the time of transfer of ownership. . . .  Indeed, to require ownership at the time of disposal "would make it too easy for a party, wishing to dispose of hazardous substance, to escape by sale its responsibility to see that the substance is safely disposed of." . . . Nor is control a statutory requirement . . . (Citations omitted.)

*Burlington Northern*, 502 F.3d at 809-810 (since chemical seller owned chemicals when the sale was

"entered into," CERCLA "requires nothing more in terms of ownership").

As with the useful product doctrine, construing the Lyon/Tondas' third-party complaints most

favorably to them, *Burlington Northern* provides support for arranger liability despite Vulcan's points

regarding ownership and control.  Under *Burlington*, the key is ownership of the chemicals at the time

of entry of the sales transaction.  The Lyon/Tondas allege that Vulcan "sold" PCE and such allegation,

construed in their favor, reveals sufficient ownership under *Burlington Northern*.  Although their

allegations may not pass muster under the Second Circuit's *General Elec*. standard, *Burlington Northern*

is this Court's guide.  Under *Burlington Northern*, Vulcan's ownership and possession arguments fail

and raise factual issues which this Court cannot dispose of with this F.R.Civ.P. 12(b)(6) motion.

### CERCLA Transporter Liability

Vulcan argues that it is not subject to section 9607(a)(4) transporter liability in the absence of

allegations or supporting facts that it accepted for transport or transported hazardous substances to

disposal or treatment facilities.

9

1    To establish a prima facie case of CERCLA transporter liability, "a plaintiff must first have made

2    a showing that a defendant transporter actually brought hazardous substances to the site, whether

3    knowingly or not." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 604 (2nd Cir. 1999).  In addition, "a

4    person is liable as a transporter not only if it ultimately selects the disposal facility, but also when it

5    actively participates in the disposal decision to the extent of having had substantial input into which

6    facility was ultimately chosen." *Tippins Inc. v. USX Corp.*, 37 F.3d 87, 94 (3rd Cir. 1994).  A

7    "transporter must be so involved in the selection process that it has substantial input into the disposal

8    decision." *Tippins*, 37 F.3d at 95.

9    The Lyon/Tondas rest their claims on section 9607(a)(3) arranger liability.  The Lyon/Tondas

10   fail to allege CERCLA transporter liability in the absence of allegations that Vulcan accepted PCE

11   waste, accepted such waste to transport to or from Halford's, selected a disposal facility, or transported

12   such waste to a disposal or treatment facility.  The Lyon/Tondas do not challenge meaningfully Vulcan's

13   transporter liability points.  As currently plead, the Lyon/Tondas' third-party complaints allege no

14   section 9607(a)(4) claims to preclude pursuit of such claims against Vulcan.

15   **CERCLA Owner Or Operator Liability**

16   Vulcan contends that it is not subject to section 9607(a)(1), (2) owner or operator liability in the

17   absence of allegations or supporting facts that Vulcan owned or operated Halford's.  Vulcan points to

18   the Lyon/Tondas' pleading admissions that they are Halford's owners and the absence of specific

19   allegations that Vulcan owned or operated the Halford's site.  The Lyon/Tondas fail to allege CERCLA

20   owner or operator liability in the absence of meaningful allegations that Vulcan owned or operated the

21   Halford's site.

22   **State Law Contribution And Equitable Indemnity Claims**

23   Vulcan argues that the Lyon/Tondas's California Civil Code section 1432 contribution and

24   equitable indemnity claims fail in the absence of grounds for CERCLA liability.  The Lyon/Tondas

25   respond that since they allege section 9607(a)(3) arranger claims, their remaining state contribution and

26   equitable indemnity claims are viable.

27   California Civil Code section 1432 addresses contribution among joint obligors and provides that

28   "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against

1   all, may require a proportionate contribution from all the parties joined with him." Under California

2   Code of Civil Procedure section 875(c), "contribution may be enforced only after one tortfeasor has, by

3   payment, discharged the joint judgment or has paid more than his pro rata share thereof."

4   "California law permits a concurrent tortfeasor to obtain equitable indemnity *only* from another

5   concurrent tortfeasor." *General Motors Corp. v. Doupnik*, 1 F.3d 862, 865 (9th Cir. 1993). "[T]here can

6   be no indemnity without liability . . . [U]nless the prospective indemnitor and indemnitee are jointly and

7   severally liable to the plaintiff there is no basis of indemnity." *Munoz v. Davis*, 141 Cal.App.3d 420,

8   425, 190 Cal.Rptr. 400, 403 (1983). "[A] right to indemnify exists only if the injured party

9   [Government] has a *legal cause of action* against both the indemnitor [Vulcan] and the indemnitee

10  [Lyon/Tondas]." *Doupnik*, 1 F.3d at 866 (italics in original; names added). The indemnity "doctrine

11  presupposes that 'each of two persons is made responsible by law to an injured party.'" *New Hampshire*

12  *Ins. Co. v. Sauer*, 83 Cal.App.3d 454, 459, 147 Cal.Rptr. 879, 882 (1978) (citations omitted).

13  Vulcan correctly notes that to succeed on their state law contribution and equitable indemnity

14  causes of action, the Lyon/Tondas must allege and prove that Vulcan is liable to the Government under

15  CERCLA. Since the Lyon/Tondas' CERCLA arranger claim remains viable, so do their state law

16  contribution and equitable indemnity claims.

17  **Declaratory Relief**

18  With their declaratory relief cause of action, the Lyon/Tondas seek this Court's determination

19  that Vulcan is liable for the Lyon/Tondas' response costs for the Halford's site and for indemnification

20  and contribution for the Lyon/Tondas' response costs.

21  The Lyon/Tondas seek declaratory relief under section 9613(g)(2) which empowers a court to

22  "enter a declaratory judgment on liability for response costs or damages that will be binding on any

23  subsequent action or actions to recover further response costs or damages." The Lyon/Tondas further

24  seek declaratory relief pursuant to 28 U.S.C. § 2201(a) which provides in pertinent part:

25      In a case of actual controversy within its jurisdiction . . . any court of the United
        States, upon the filing of an appropriate pleading, may declare the rights and other legal
26      relations of any interested party seeking such declaration, whether or not further relief
        is or could be sought. Any such declaration shall have the force and effect of a final
27      judgment or decree and shall be reviewable as such.

28  As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

11

1  controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

2  the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

3  273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from a opinion advising what the law would be upon a hypothetical state of facts.

8  *Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

9  _____Vulcan argues that in the absence of legal grounds to subject it to contribution or indemnity, there

10  is no actual, justiciable controversy to warrant declaratory relief.  Similar to their state law contribution

11  and equitable indemnity claims, the Lyon/Tondas' declaratory relief claims live on with their section

12  9607(a)(3) arranger claim. The dispute over contribution and indemnification is a justiciable controversy.

13  **CONCLUSION AND ORDER**

14  For the reasons discussed above, this Court:

15  1.    DENIES Vulcan F.R.Civ.P. 12(b)(6) dismissal of the Lyon/Tondas' section 9607(a)(3)

16       arranger liability and derivative claims; and

17  2.    LIMITS the Lyon/Tondas to pursue against Vulcan only section 9607(a)(3) arranger and

18       derivative claims.

19  IT IS SO ORDERED.

20  **Dated:    December 14, 2007**              **/s/ Lawrence J. O'Neill**
                                         UNITED STATES DISTRICT JUDGE