1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,                    CASE NO. CV F 07-0491 LJO MJS

11                          Plaintiff,           **ORDER ON CITY'S MOTION TO**
                                                 **INTERVENE IN PROPOSED CONSENT**
12          vs.                                  **DECREE**
                                                 (Docs. 486.)
13  STEPHEN C. LYON, et al.,

14                          Defendants.
    _____/

15

16  AND RELATED ACTIONS.

17  _____/

18

19                          **INTRODUCTION**

20          Former cross-defendant City of Modesto ("City") seeks to intervene to add protective language

21  to the proposed Consent Decree ("Consent Decree") between plaintiff United States of America

22  ("Government") and defendants Estate of Shantilal Jamnadas ("Jamnadas Estate") and its personal

23  representative Rajendra Jamnadas.[1]  The Government, Jamnadas Estate and Rajendra Jamnadas do not

24  oppose the City's intervention but oppose addition of the City's proposed language to the Consent

25  Decree.  This Court considered the City's motion to intervene on the record and VACATES the May

26  _____

27          [1]          This Court will refer to the Jamnadas Estate, Rajendra Jamnadas and Chandra Jamnadas collectively as
    the "Jamnadas Settlers," as they are referred to in the Consent Decree.  Chandra Jamnadas is not a defendant in this action
28  but is included in the Consent Decree as one of the Jamnadas Settlers.

                                                  1

1  16, 2011 hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court GRANTS

2  the City's limited intervention but DENIES its proposed addition to the Consent Decree.

### BACKGROUND

### Summary

5       In March 2007, the Government, for the Environmental Protection Agency ("EPA"), initiated

6  this action to pursue claims under the Comprehensive Environmental Response and Compensation and

7  Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq., against the Jamnadas Estate, Rajendra Jamnadas

8  and others.  The Government sought past and future costs to investigate and remediate perchloroethylene

9  ("PCE") contamination relating to a Modesto property ("property") where Shantilal Jamnadas, now

10  deceased, operated a dry cleaners during 1977-2002.  PCE is a volatile organic compound commonly

11  used in dry cleaning.  The City seeks to add language to the Consent Decree that the Consent Decree

12  does not prevent the City to enforce relief it is awarded against the Jamnadas Estate in ongoing state

13  court litigation.[2]

### State Court Litigation

15       Since late 1998, the City, its redevelopment agency, and sewer district have pursued in San

16  Francisco Superior Court now consolidated actions ("state court action") to recover damages and

17  equitable relief for contamination at the property.  The state court action has proceeded in four separate

18  phases to address liability, damages and related relief.  A February 14, 2007 decision awarded the City

19  $50,488.27 against the Jamnadas Estate for past costs to respond to property contamination and

20  subjected the Jamnadas Estate, by declaratory relief, to future PCE remediation costs, if any, for the

21  property.[3]  Recent hearings have been conducted to determine the scope of declaratory relief to be

22  entered against the Jamnadas Estate for the City's remediation costs.

### The Consent Decree

24       The Jamnadas Estate, Rajendra Jamnadas and the property owner defendants in this action

---

26       [2]       The Government entered into, and this Court accepted, another consent decree, not at issue here, among the Government and the property's owners.

27       [3]       The City's award against the Jamnadas Estate is under the California Hazardous Substance Account Act ("HSAA"), California Health & Safety Code, §§ 25300-25395.45.  The City did not prevail against the Jamnadas Estate on the City's common law claims.

1    pursued now dismissed cross-claims against the City and others for CERCLA contribution and

2    indemnity.  The City is no longer a party to this action.

3          After what the Government and Jamnadas Estate characterize as "extensive negotiations," the

4    Government and Jamnadas Settlers agreed to settle the Government's CERCLA claims.  On January 28,

5    2011, the Government lodged the Consent Decree by which the Jamnadas Settlers agree to pay $650,000

6    for EPA's costs to respond to property contamination.   The Government and Jamnadas Estate

7    characterize the Jamnadas Estate as "a zero asset estate with limited other financial avenues" and the

8    settlement as an "ability-to pay settlement."

9          The $650,000 settlement is funded by three of four insurers which have defended the Jamnadas

10   Estate under comprehensive general liability policies.  Lumbermen's Mutual Company ("LMC") has

11   contributed $448,500, and Insurance Company of the West ("ICW") and Balboa Insurance have funded

12   the remainder.  The fourth insurer became insolvent and dropped out of the defense of the Jamnadas

13   Estate.  LMC is in "runoff" status meaning that it has placed sums in an account for all claims against

14   its insureds and upon depletion of those funds, no additional funds will be available.[4]

15         On February 3, 2011, notice of the settlement was published in the Federal Registrar, and the

16   Government received only the City's comment seeking to "clarify" that the settlement does not apply

17   to the state court action.  The Consent Decree includes a "Effect of Settlement/Contribution Protection"

18   provision which raises concerns for the City and provides:

19              The Parties agree . . . that Jamnadas Settlers are entitled . . . to protection from
            contribution actions or claims provided by Section 113(f)(2) of CERCLA, 42 U.S.C. §
20          9613(f)(2), for "matters addressed" in this Consent Decree.  The "matters addressed" in
            this Consent Decree are all response actions taken or to be taken and all response costs
21          incurred or to be incurred, at or in connection with the Site, by the United States or any
            other person, except the State of California.  The "matters addressed" in this Consent
22          Decree do not include those response costs or response actions to which the United
            States has reserved its rights under this Consent Decree (except for claims for failure to
23          comply [with] this Decree), in the event that they United States asserts rights against
            Jamnadas Settlers falling within the scope of such reservations.
24

25         The Consent Decree also includes the following escape clause:

26              If for any reason this Court should decline to approve this Consent Decree in the

27   _____

28   [4]      The $665,000 settlement funds have been deposited into the trust account of counsel for the Jamnadas
     Estate.

1    form presented, this agreement is voidable at the sole discretion of any party and the
2    terms of the agreement may not be used as evidence in any litigation between the Parties.

3                                  **The City's Proposed Addition**

4            The City fears that the Jamnadas Estate "will likely use this Consent Decree to bar Modesto from

5    recovering its response costs in state court both now and in the future" and that the Government will not

6    complete the cleanup of the property's extensive contamination and "eventually will walk away." The

7    City notes the need for another $9 million to prevent further soil and groundwater contamination from

8    the property and anticipated contamination of a City well which an EPA contractor has recommended

9    to shut down. The City's hydrogeologist notes that significant portions of a PCE plume associated with

10   the property "threatens the City of Modesto drinking water supply" to require further treatment "to

11   deliver drinking water to local residents." The City contends that the Jamnadas Estate's $650,000

12   payment "is only a fraction of the estimated future costs for cleaning the site."

13           The City proposes the following addition ("proposed addition") to the Consent Decree:

14                   Nothing in this Consent Decree shall interfere with or preclude the rights or
                 ability of the City of Modesto, Modesto Redevelopment Agency or City of Modesto
15               Sewer District Number 1 to pursue state law claims or actions against the Settling
                 Defendant(s) in connection with the Site.
16

17   According to the City, the proposed addition would protect "the rights of all parties, and even the public

18   such as Modesto residents, by ensuring that the Estate of Jamnadas does not use the Consent Decree to

19   avoid its legal responsibilities."

20           The Government and Jamnadas Estate do not oppose the City's intervention into this action on

21   condition that this Court enter without delay the Consent Decree in its current form without the City's

22   proposed addition. The Government and Jamnadas Estate contend that the Consent Decree is fair and

23   reasonable and promotes CERCLA goals and the public interest.

24                                       **DISCUSSION**

25                                  **Intervention Standards**

26           The City seeks to intervene into the Consent Decree to include its proposed addition.

27           Intervention attempts to accommodate competing interests of: (1) efficient administration of legal

28   disputes by resolving related issues in one lawsuit; and (2) prevention of a single lawsuit from becoming

                                                    4

unnecessarily complex, unwieldy or prolonged.  *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2nd Cir. 1994).  "In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations.  We generally interpret the requirements broadly in favor of intervention." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  "Federal courts should allow intervention where no one would be hurt and greater justice could be attained."  *Sierra Club v. Espy*, 18 F.3d 1202, 1204-1205 (5th Cir. 1994).

A "district court is required to accept as true the non-conclusory allegations made in support of an intervention motion."  *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).  "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections."  *Berg*, 268 F.3d at 820.  The potential intervenor bears the burden to demonstrate intervention conditions are satisfied.  *Petrol Stops Northwest v. Continental Oil Co.*, 647 F.2d 1005, 1010, n. 5 (9th Cir. 1981), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 672 (1981); *U.S. Postal Service v. Brennan*, 579 F.2d 188, 191 (2nd Cir. 1978).

## **Intervention As Matter Of Right**

The City seeks intervention of right under F.R.Civ.P. 24(a), which provides:

> On timely motion, the court must permit anyone to intervene who:
>
> . . .
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Advisory Committee comments to the 1966 amendment to F.R.Civ.P. 24 provide that intervention of right "may be subject to appropriate conditions or restrictions responsive to among other things to the requirements of efficient conduct of the proceedings." "[R]estrictions on participation may also be placed on an intervenor of right and on an original party."  *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383, 107 S.Ct. 1177 (1987).

The City calls on this Court to determine whether:

1.	The City's intervention motion is timely;

2.  The City claims a significantly protectable interest relating to the property or transaction subject to this action;

3.  This action's disposition may as a practical matter impair or impede the City's ability to protect such interest; and

4.  The City's interest is inadequately represented by the current parties to this action.

*See U.S. v. Aerojet General Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010).

### *Timeliness*

Intervention is granted only on "timely application" or motion.  F.R.Civ.P. 24(a) and (b)(1); *Blanco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992) ("[T]imeliness stands as a sentinel at the gates whenever intervention is requested and opposed.")  "In this context, the question of timeliness is to be determined by the district court in its discretion." *EEOC v. Westinghouse Electric Corp.*, 675 F.2d 164, 165 (8th Cir. 1982).  "Timeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591 (1973).  "[T]he timeliness requirement for intervention as of right should be treated more leniently than for permissive intervention because of the likelihood of more serious harm." *U.S. v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

As to intervening into proposed consent decrees, the Ninth Circuit Court of Appeals addresses the intervention applicant's diligence.  *See Aerojet General*, 606 F.3d at 1149 ("Applicants acted promptly after learning of the proposed consent decree. They submitted comments, filed Freedom of Information Act requests, and ultimately moved to intervene, all within a span of four months.")

The City has acted timely and diligently to address its concerns as to the Consent Decree.  The City submitted comments during the 30-day period required under CERCLA.  The City met this Court's April 18, 2011 deadline to file papers to raise Consent Decree concerns.  The City could not have been expected to predict exact Consent Decree terms and reacted quickly upon learning of them.

### *Presence Of A Protectable Interest*

The City argues that his has a "significant protectable interest" relating to the property's cleanup and to preserve legal or equitable relief in the state court action.

Whether an intervention as of right applicant demonstrates sufficient interest in an action is a

1  "practical, threshold inquiry," and "[n]o specific legal or equitable interest need be established." *Greene*

2  *v. U.S.*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd*, 64 F.3d 1266 (9th Cir. 1995); *Northwest Forest Resource*

3  *Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996).  The party seeking intervention must demonstrate

4  a "significantly protectable interest" in the litigation to merit intervention.  *Northwest Forest Resource*,

5  82 F.3d at 837.  The Ninth Circuit views the "interest test" as "primarily a practical guide to disposing

6  of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due

7  process . . ."  *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

8        "The requirement of a significantly protectable interest is generally satisfied when 'the interest

9  is protectable under some law, and [ ] there is a relationship between the legally protected interest and

10  the claims at issue.' " *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Sierra Club*

11  *v. EPA*, 995 F.2d 1478, 1484 (9th Cir.1993)).  "Although the intervenor cannot rely on an interest that

12  is wholly remote and speculative, the intervention may be based on an interest that is contingent upon

13  the outcome of the litigation." *U.S. v. Union Electric*, 64 F.3d 1152,1162 (8th Cir. 1995); *see also Aerojet*

14  *General*, 606 F.3d at 1150.

15        As to extinguishable CERCLA contribution claims, the Ninth Circuit has explained:

16        Applying these standards, we recently held that a contribution claim subject to
    extinction pursuant to CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), is a "significantly
17    protectable interest" warranting an order allowing third parties, in that case non-settling
    potentially responsible parties ("PRPs"), to intervene as of right pursuant to Rule
18    24(a)(2), upon timely application, in an action to obtain court approval for a CERCLA
    consent decree entered into by the United States and would-be "settling PRPs" – i.e.,
19    those who have agreed to pay a specific share of clean-up costs at a designated site, in
    exchange for protection against contribution claims from the non-settling PRPs and
20    others regarding matters addressed in the settlement. *Aerojet*, 606 F.3d at 1149-51; *see*
    *also United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1394-96 (10th Cir.2009);
21    *Union Electric*, 64 F.3d at 1163-67.

22  *City of Emeryville v. Robinson,* 621 F.3d 1251, 1259 (9th Cir. 2010).

23        The City characterizes as a "significantly, protectable interest" its declaratory relief rights in the

24  state court action in that the Jamnadas Estate agrees to pay EPA $650,000 "in exchange for protection

25  against contribution claims from non-settling potentially responsible parties like the City."  As such, the

26  City seeks to intervene to protect its declaratory rights in the state court action.

27        The City has a significantly protectable interest in undetermined declaratory relief rights in the

28  state court action to warrant its limited intervention to address the Consent Decree.

7

***Impairment Of Protectable Interest***

The City contends that without intervention, the Consent Decree could impair its right to enforce a final judgment in the state court action.

An intervention applicant must show that disposition of the pending action may "as a practical matter impair or impede the applicant's ability to protect that interest." *SEC v. Navin*, 166 F.R.D. 435, 440 (N.D. Cal. 1995). "[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. U.S.*, 450 F.3d 436, 441 (2006); *see also U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). If an absentee would be substantially affected in a practical sense by the determination of an action, the absentee should be entitled to intervene. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

The City notes that the Jamnadas Estate could use the Consent Decree to claim no obligation to pay the City's response costs if the City is awarded declaratory relief in the state court action. The City points to Consent Decree's reference to "matters addressed" as "all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site." The City argues that the Consent Decree fails to clarify that "matters addressed" refers "only to response costs that are based on a CERCLA action and do not affect the rights of parties who may receive common law relief in a state court for the same contamination."

The Government and Jamnadas Estate raise little challenge as to the City's protectable interest to tip in favor of the City's limited intervention.

***Inadequate Representation***

The City argues that the Government and Jamnadas Estate inadequately represents its interests in this action.

To determine whether an applicant's interest is adequately represented by existing parties, a court considers whether: (1) the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) the present party is capable and willing to make such arguments; and (3) the proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Northwest Forest Resource*, 82 F.3d at 838; *California v. Tahoe Regional Planning Agency*,

8

792 F.2d 775, 778 (9th Cir. 1986).  The inadequate representation prong is satisfied by showing a party's representation of its interest "may be" inadequate.  The burden of making that showing should be treated as minimal.  *Trbovich v. United Mine Workers of America*, 404 U.S. 538, n. 10, 92 S.Ct. 630, 636, n. 10 (1971).

The City notes that its interests "are directly at odds" with those of the Jamnadas Estate and the Government.  The City points out that the Jamnadas Estate opposes the City's attempts to seek declaratory relief in the state court action despite the Jamnadas Estate's liability for property contamination.

The City's interests are inadequately represented in this action.  The City and Jamnadas Estate are opposing parties in the state court action.  The Jamnadas Estate pursued now dismissed claims against the City in this action.  The Government is no more than neutral and faces disruption of its settlement with the Jamnadas Settlers.

**Mandatory CERCLA Intervention**

F.R.Civ.P. 24(a)(1) provides an intervention of right to anyone "given an unconditional right to intervene by a federal statute."  The City notes that it is entitled to intervene under 42 U.S.C. § 9613 ("section 9613").

Section 9613(f) confers a contribution right and addresses settlement:

(1) Contribution

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

(2) Settlement

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement **shall not be liable for claims for contribution regarding matters addressed in the settlement**. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.  (Bold added.)

"Thus, no finding of liability is required, nor assessment of excessive liability, before the

1    contribution interest arises." *Union Elec.*, 64 F.3d at 1167.

2         Section 9613(i) permits "any person [to] intervene as a matter of right when such person claims

3    an interest relating to the subject of the action and is so situated that the disposition of the action may,

4    as a practical matter, impair or impede the person's ability to protect that interest, unless the President

5    . . . shows that the person's interest is adequately represented by existing parties."  Section 9613(i)

6    "confers a right to intervene on 'any person' who 'claims an interest' in the litigation, should the

7    disposition of the action 'impair or impede' that interest."  *Aerojet General*, 606 F.3d at 1150.

8         The City argues that section 9613(i) gives it the right to intervene on timely application in that

9    section 9613(f)(2) cuts of contribution rights of non-settling potential responsible parties like the City.

10        The Government and Jamnadas Estate offer no meaningful resistence to the City's intervention

11   under section 9613(i).  Section 9613(i) provides the City additional support for its limited intervention.

12                              **Permissive Intervention**

13        The City alternatively claims that it is entitled to permissive intervention under F.R.Civ.P.

14   24(b)(1)(B), which permits on timely motion, intervention to anyone who "has a claim or defense that

15   shares with the main action a common question of law or fact."

16        "Permissive intervention is committed to the broad discretion of the district court and is therefore

17   reviewed by [an appellate] court for abuse of discretion."  *Air California*, 799 F.2d at 539; *United States*

18   *v. $129,374 in U.S. Currency*, 769 F.2d 583, 586 (9th Cir. 1985), *cert. denied*, 474 U.S. 1086, 106 S.Ct.

19   863 (1986).  F.R.Civ.P. 24(b) necessarily vests discretion in the district court to determine the fairest and

20   most efficient method of handling a case.  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd*

21   *on other grounds*, 495 U.S. 82, 110 S.Ct. 1679 (1990); *SEC v. Everest Management Corp.*, 475 F.2d

22   1236, 1240 (2nd Cir. 1972).

23        A permissive intervention applicant must show that "(1) it shares a common question of law or

24   fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for

25   jurisdiction over the applicant's claims."  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

26        The City notes shared common questions of law and fact given the property's clean up costs and

27   that the City's interest to protect its declaratory relief rights is implicated and potentially impacted by

28   the "scope of protection" which the Consent Decree provides to the Jamnadas Estate.  The City points

                                          10

1  to its timely attempt to intervene within two an a half months of the Consent Decree's lodging. The City

2  further points to this Court's independent basis for jurisdiction in that City seeks to modify the Consent

3  Decree, the approval of which is pending before this Court.

4        Since the City is entitled to intervention as a matter of right, it is no less entitled to permissive

5  intervention. The Government and Jamnadas Estate do not oppose the City's intervention if no delay

6  results to Consent Decree entry. The City seeks to intervene only to address its proposed addition. The

7  City does not seek to renew discovery or relitigate issues. The limited scope of the City's intervention

8  will not contribute to unreasonable delay. The Government and Jamnadas Estate point to no meaningful

9  delay or inefficiency to warrant denial of the City's limited intervention.

10  **<u>Power To Modify</u>**

11        A consent decree is "essentially a settlement agreement subject to continued judicial policing."

12  *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir.1983). The City argues that this Court is empowered

13  to modify the Consent Decree and that its ability to do so is not as restricted as the Government suggests.

14  The Government responds that this Court lacks authority to modify the Consent Decree and must accept

15  or reject it "as submitted." The Jamnadas Estate accuses the City of seeking to block the settlement to

16  bolster the City's "litigation position in the state court action."

17        In *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615,

18  630 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217, 103 S.Ct. 1219 (1983), the Ninth Circuit explained a

19  court's restrictions as to consent decrees:

20      We may not delete, modify, or substitute certain provisions of the consent decree. Of
    course, the district court may suggest modifications, but ultimately, it must consider the
21      proposal as a whole and as submitted. Approval must then be given or withheld. Our
    only alternatives on appeal are to vacate and remand upon a determination that the
22      district court abused its discretion, or to affirm its judgment. In short, the settlement must
    stand or fall as a whole.

23

24        In addressing a CERCLA settlement in *U.S. v. Cannons Engineering Corp.*, 899 F.2d 79, 84 (lst

25  Cir. 1990), the First Circuit Court of Appeals explained:

26      The relevant standard, after all, is not whether the settlement is one which the court itself
    might have fashioned, or considers as ideal, but whether the proposed decree is fair,
27      reasonable, and faithful to the objectives of the governing statute. *See Durrett v. Housing
    Authority*, 896 F.2d 600, 603-04 (1st Cir.1990) (describing district court's task). Thus,
28      the first layer of insulation implicates the trial court's deference to the agency's expertise

1   and to the parties' agreement. While the district court should not mechanistically
2   rubberstamp the agency's suggestions, neither should it approach the merits of the
    contemplated settlement de novo.

3   A fellow district court has further explained:

4   Proposed modifications in the details of an approved settlement agreement also must be
    reviewed in the context of the agreement as a whole. However, if the suggested changes
5   are extensive, the context itself is altered, and the court no longer has established
    reference points by which to evaluate the fairness, reasonableness, and adequacy of each
6   revision.

7   *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 769 F.Supp. 1491, 1495 (E.D.

8   Ark. 1491).

9   With these standards in mind, this Court turns to the parties' arguments in favor and against the

10  City's proposed addition.

11  <u>**Fair, Reasonable And In The Public Interest**</u>

12  "Before approving a consent decree, a district court must be satisfied that it is at least

13  fundamentally fair, adequate and reasonable. . . . In addition, because it is a form of judgment, a consent

14  decree must conform to applicable laws." *U.S. v. State of Or.*, 913 F.2d 576, 580 (9th Cir. 1990) (citation

15  omitted). "The court must assure itself that the proposed consent decree is fair, reasonable, and equitable

16  . . . and that the decree does not violate the law or public policy . . . . Where the lawsuit seeks to enforce

17  a statute, the most important factor as to public policy is whether the decree comports with the goals of

18  Congress." *Sierra Club v. Coca-Cola Corp.*, 673 F.Supp. 1555, 1556 (M.D. Fla. 1987).   A "court's

19  function is not to determine whether the resulting array of rights and liabilities is the one that will best

20  serve society, but only to confirm that the resulting settlement is within the reaches of the public

21  interest." *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1460 (D.C. 1995) (internal quotations and citations

22  omitted).

23  The City characterizes its proposed addition as "modest" and not "an alteration that changes

24  context" or "deprives the court or the parties of points of reference."  The City notes that its proposed

25  addition "is not a matter of dispute" and is simply a matter of inclusion, not a change to the Consent

26  Decree's content.

27  The Government and Jamnadas Estate urge approval of the Consent Decree without the City's

28  proposed addition as fair and in the public interest because:

12

1      1.     The settlement was "litigated and negotiated over a period of years" and is "the product

2            of arm's length negotiation";

3      2.     The Jamnadas Estate is a zero asset estate with limited financial avenues other than

4            insurance;

5      3.     The settlement is an "ability to pay settlement" based on the Jamnadas Estate's inability

6            to pay more;

7      4.     The settlement proceeds will continue to fund EPA clean up of the property to promote

8            CERCLA goals; and

9      5.     The City offers no factual or legal support that the Consent Decree without the City's

10            proposed addition "is not fair or in the public interest."

11     There is no meaningful dispute whether the Consent Decree is fair and reasonable and promotes

12 the public interest.  As a whole, it does.  The key issue is whether the City's proposed addition is fair

13 and reasonable and promotes the public interest.  Determination of that issue requires examination of

14 other factors discussed below.

15                       **<u>Necessity Of The City's Proposed Addition</u>**

16     The City argues that its proposed addition is necessary in that the Jamnadas Estate "likely" will

17 argue that the Consent Decree bars the City from further recovery given this Court's retention of

18 jurisdiction to potentially enjoin the state court.  *See Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir.

19 1998) ("Where the district court expressly retains jurisdiction to enforce a settlement agreement, and to

20 resolve disputes that may arise under it, litigation in state court 'would pose a significant risk of

21 frustrating the district court's jurisdiction over the consent judgment.' . . . For this reason, injunctions

22 have been approved . . .")  The City contends that the Consent Decree fails to assure that the Jamnadas

23 Estate "will bear the costs of the ongoing cleanup."

24     The Government and Jamnadas Estate argue that the City's proposed addition is unnecessary to

25 protect its interests in the state court action.  The Jamnadas Estate notes that the Consent Decree's

26 contribution protection language does not interfere with the City's ability to enforce its state court action

27 rights in that Section 9613(f)(2) provides: "A person who has resolved it liability to the United States

28 in an administrative or judicially approved settlement shall not be liable for claims for contribution

1    regarding matters addressed in the settlement."

2          The Consent Decree's "Effect of Settlement/Contribution Protection" provision provides: "The

3    Parties agree . . . that Jamnadas Settlers are entitled . . . to protection from contribution actions or claims

4    provided by" section 9613(f)(2) "for 'matters addressed' in this Consent Decree."  The Jamnadas Estate

5    notes that the state court action addresses the City's remaining HSAA claim and that the Consent Decree

6    does not prevent the City to initiate a cost recovery action under HSAA.  The Jamnadas Estate explains

7    that the Consent Decree bars only CERCLA contribution claims under  section 9613.  The Jamnadas

8    Estate concludes that "the Consent Decree does not act as a bar to the City's cost recovery action."

9          The Government construes the City's proposed addition as this Court's "endorsement of the

10   City's interpretation of the Consent Decree language" and which is unnecessary and inappropriate.  The

11   Government points to representations of counsel of the Jamnadas Estate to agree with the City's

12   interpretation of the Consent Decree to eliminate the need for the City's proposed addition.[5]  The

13   Government argues that the "contribution protection" sought by the proposed addition requires a detailed

14   analysis of the Consent Decree's application to the state court action which "is not even in controversy."

15         The Jamnadas Estate echoes the Government's sentiments and notes impropriety "for this Court

16   to perform an analysis of whether speculative future claims in an ongoing state court action by non-

17   parties to this action are or are not subject to contribution protection."  The Jamnadas Estate points out

18   that "the extent of any contribution protection is a matter properly addressed to the state court once the

19   Consent Decree has been entered."

20         The Government and Jamnadas Estate correctly question the need and propriety of the City's

21   proposed addition.  The Consent Decree's "Effect of Settlement/Contribution Protection" provision

22   _____

23         [5]     In his March 11, 2011 letter, counsel for the Jamnadas Estate states:

24              The ongoing state law claims brought by City of Modesto against Estate of Jamnadas are not
             barred by the Consent Decree. . . . Since the proposed Consent Decree sets forth specifically what type of
25           claims are barred and does not seek to preclude the state law claims of City of Modesto, there is no need
             to clarify the language of the proposed Consent Decree.
26

27              . . .

28              In conclusion, the current language contained within the Consent Decree does not bar any state
             law claims brought by the City of Modesto.

                                              14

addresses CERCLA relief as to the Jamnadas Estate. The City fails to substantiate that it applies to its pending HSAA claims to require its proposed addition. The Jamnadas Estate is entitled to section 9316(f)(2) protection in exchange for its settlement funds. The Jamnadas Estate raises a valid point that the City's proposed addition appears as a belated attempt to negotiate Consent Decree terms. This Court is unconvinced the City's proposed addition is necessary or proper.

### Settlement Jeopardized

The Jamnadas Estate notes that inclusion of the City's proposed addition would frustrate CERCLA goals and the public interest with a likely "failed settlement." The Government raises concerns that this Court's rejection of the Consent Decree would jeopardize the settlement to require further negotiation, expenses and delay in addition to the threat that the Jamnadas Settlers' "insurance carriers determine that they are no longer willing or financially able to fund the settlement."

In his declaration, Keith Chidlaw, counsel for the Jamnadas Estate, makes noteworthy observations:

> If the Consent Decree is not entered, I believe the settlement will most likely fall apart. Lumbermen's has implied it will seek the return of its funds to use to pay for ongoing defense costs in the state court action as well as other claims around the country [if] the Consent Decree is not entered promptly. Thus, I believe the $448,500 settlement funds from Lumbermen's will be lost for remediation at the site if this Consent Decree is not entered.

> The policy limits of ICW and Balboa are $300,000 each. Each of these carriers is paying approximately one-third of its limits as part of the Consent Decree. Even if both of these carriers paid their entire policy limits, the settlement amount would be less than the $650,000 contemplated by the Consent Decree. Further, if these carriers paid their policy limits, those two carriers would exhaust their limits and would have no further duty to defend or indemnify Estate of Jamnadas in any case including the state court action.

> It is my firm belief that it is highly unlikely ICW or Balboa would pay their policy limits to resolve the federal court action. Both have filed declaratory relief actions in state court contending there is no duty to indemnify because the sudden and accidental exception to the absolute pollution exclusion has not been triggered. . . . However, it is my belief if the state court declaratory relief action goes forward, the ultimate outcome in that case will be a finding in favor of the insurers that there is no coverage. At that point, the insurers would withdraw from the defense of Estate of Jamnadas in the federal court action as well.

The City responds that the Jamnadas Estate and Government exaggerate and speculate as to the consequences of the City's proposed addition. The City notes that neither the Jamnadas Estate nor the Government commit to exercise the Consent Decree's escape clause if the proposed addition is included.

1   The City argues that given the Jamnadas Estate's concession that the Consent Decree does not bar the

2   City's state court action claims, "there can be no rational reason not to make explicit in the consent

3   decree that which the Estate of Jamnadas concedes."  The City points out that with disbursement of the

4   settlement funds, the insurers "have no reason to upset the deal" and "have no incentive to stop the deal"

5   and that the Jamnadas Estate "has a strong incentive to finish the deal so as not to upset the insurer

6   relationship." The City characterizes Mr. Chidlaw's comments as objectionable "speculation, projection,

7   and opinion" given disbursement of settlement funds to his trust account and absence of insurer

8   statements as to possible withdrawal of settlement funding.  Lastly, the City notes the absence of the

9   Government's "incentive to void the deal" in that the "amount of settlement funds coming to EPA

10  remains the same regardless of the addition of the single sentence."

11       The Jamnadas Estate paints a bleak picture if this Court includes the City's proposed addition.

12  The Jamnadas Estate threatens to void the Consent Decree which in turn could result in the withdrawal

13  of insurance settlement funds and defense of the Jamnadas Estate.  Although Mr. Chidlaw may

14  extrapolate the severity of possibilities, this Court must focus to preserve limited resources to promote

15  remediation at the property.  As such, this Court considers seriously and is unable to ignore the

16  Government and Jamnadas Estate's comments regarding potential jeopardizing of settlement and

17  potential loss of settlement funds and in turn frustration of CERCLA purposes and the public interest.

18  The Jamnadas Estate properly questions whether the City "wants to put its litigation rights ahead of the

19  public interest."

20  ## State Court Jurisdiction And Comity

21       Lastly, the City argues that notions of comity between federal and state courts support the City's

22  proposed addition.

23       Comity is "proper respect for state functions, a recognition of the fact that the entire country is

24  made up of a Union of separate state governments, and a continuance of the belief that the National

25  Government will fare best if the States and their institutions are left free to perform their separate

26  functions in their separate ways."  *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746 (1971).

27       The City notes that comity requires federal respect for state court competency to conduct

28  proceedings and enter judgments.  The City concludes there is no great or immediate irreparable injury

16

1    if its proposed addition is included in the Consent Decree and that a state court action judgment is

2    entitled to acknowledgment that the Consent Decree will interfere with it.

3         The City's points regarding comity fail to substantiate the need for its proposed addition as do

4    its speculative reply comments regarding a potential "future negligence claim" based on evidence that

5    surely would have been developed by this point.

6                    **CONCLUSION AND ORDER**

7         For the reasons discussed above, this Court:

8        1.      PERMITS the City to intervene into this action for the limited purpose to address the

9                 Consent Decree;

10       2.      DENIES the City's request to include its proposed addition into the Consent Decree;

11       3.      ENTERS the Consent Decree to constitute this Court's final judgment as to the

12                 Government, Jamnadas Settlers, the City and other applicable parties, pursuant to

13                 F.R.Civ.P. 54 and 58; and

14       4.      ORDERS the parties, no later than May 24, 2011, to take all necessary action to conclude

15                 this action in its entirety, including dismissals of defending parties, and to file a joint

16                 status report to address conclusion of this action, including the parties' suggestions to

17                 conclude this action in its entirety or explanations of good cause why this action cannot

18                 be dismissed in its entirety.

19   Lastly, this Court recognizes, as presumably the parties do, that granting the City's intervention but

20   denying inclusion of the proposed addition essentially moots the effects of the City's intervention.

21   Nonetheless, the Government and Jamnadas Settlers only opposed the proposed addition, not the City's

22   intervention for which this Court found no grounds to deny.

23         IT IS SO ORDERED.

24   **Dated:   May 11, 2011**                 **/s/ Lawrence J. O'Neill**
                                             UNITED STATES DISTRICT JUDGE

25

26

27

28